## Jones *versus* Backus, *et al.*

1. On an appeal from an award of arbitrators, if one of the defendants makes the affidavit required by the Act and the recognizance be for all, the appeal will stand for all.

2. Where a conditional verdict is rendered in favor of the plaintiff, a rule for a new trial obtained by him will postpone the performance of the condition, in this case the payment of money, until the rule is disposed of.

3. The unsupported oath of one of the parties to an instrument is not sufficient to defeat or change it when opposed by the oath of the other party.

May 11th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ. STERRETT, J., absent.

ERROR to the Court of Common Pleas of *McKean county:* Of January Term 1886, No. 249.

This was an action of ejectment brought by N. F. Jones against S. A. Backus to enforce specific performance of articles of agreement executed between them February 9th, 1867, for the sale and conveyance by Jones to Backus of the land described in the writ. The plea of not guilty was entered for the defendant. During the pendency of this issue the same land was taken in execution as the property of S. A. Backus, the defendant, and duly sold and conveyed to Lucius Rogers by deed poll, acknowledged in open court, and recorded.

On March 12th, 1884, the said Lucius Rogers, on his motion and petition in open court, without objection from either plaintiff or defendant, was granted leave to come upon the record as a defendant in the action, on the ground that he had become the owner of the entire interest of S. A. Backus in the land, and thereupon appeared and entered his plea of not guilty.

On March 19th, 1884, S. A. Backus and Lucius Rogers joined in entering a rule of reference and declaring their determination to have arbitrators chosen for the trial of all matters at variance in the suit under the law relating to compulsory arbitrations. In pursuance to this rule the cause was tried before arbitrators, who, May 1st, 1884, filed their award in court, finding in favor of the plaintiff and against the defendants for the land, to be released within sixty days on payment of $6,840.12 and costs, and the award was duly entered of record. On the 19th May, 1884, S. A. Backus, "one of the defendants," entered an appeal in his own name, took the oath required by law for his own appeal and entered into a recog-

nizance in his own name, with bail, conditioned that both defendants pay the costs, and paid the costs to the prothonotary. No other appeal was entered, and no money was paid on the award and judgment.

S. A. Backus was still in possession, and plaintiff set the case down for trial against him. When the cause was called for trial plaintiff's counsel asked the court to direct that the jury be sworn as to S. A. Backus alone. The court refused, but directed the jury to be sworn as to both defendants, and excluded the award of arbitrators from the cause, and at plaintiff's request sealed bills of exceptions to such rulings. (First and second assignments of error.)

The verdict was rendered March 19th, 1885, in favor of the plaintiff for the land, to be released on the payment of $2,485.85, as follows: $485.85, with interest on whole amount, three months from date; $1,000, with interest on the whole amount, nine months from date; and $1,000, with interest and costs of suit, fifteen months from date. On motion and reasons filed by plaintiff a rule was granted to show cause why a new trial should not be granted. This was continued until November 4th, 1885, at which time it was argued, and on December 8th, following, was discharged. On December 12th, 1885, the jury fee was paid and judgment entered on the verdict. On December 21st, the affidavit of plaintiff was filed alleging the failure of defendants to comply with the conditions of the verdict, and application was made to the court for a writ of *habere facias possessionem*, and a rule to show cause was granted.

On the same day affidavit on behalf of defendants was filed alleging the tender of $1,595 on December 19th, 1885, in payment of the first and second installment of purchase money on the verdict and judgment; and application was made by defendants for leave to pay the said sum into court, with a rule on plaintiff to show cause why he should not file a deed to Lucius Rogers for the land. There was no conflict as to the facts stated in the affidavits, nor were any answers filed to the rules to show cause, but the parties went to hearing on the record, and a stipulation filed agreeing on the facts; and thereupon the plaintiff's rule was discharged, and, December 22d, 1885, it was ordered "that the sum of $1,595, being the two installments of payment now overdue by the verdict of the jury, be paid into court, and that it remain in court until a deed be filed in court by the plaintiff that is satisfactory to the defendants, unless the court shall order it paid to the plaintiff." To these rulings the plaintiff excepted and bills of exception were sealed. (Third and fourth assignments of error.)

On 29th December, 1885, Lucius Rogers paid into court $1,595; and on 2d February, 1886, plaintiff renewed his application for a writ of *habere facias possessionem,* and it was again refused.    (Fifth assignment of error.)

An examination of the verdict and calculation thereon discloses the fact that the sum of $1,595 is two dollars and seventy-one cents less than the amount of debt and interest due plaintiff on the 19th December, 1885, by the terms of the verdict. The plaintiff's counsel was not aware of this fact until after the order of December 22, 1885, was made and entered.

On the trial the defendant S. A. Backus produced a statement in writing made on a settlement of all accounts between N. F. Jones and himself, dated May 13th, 1864, and signed by them.    The statement shows a balance due from S. A. Backus to N. F. Jones of $965.47, and following this was a statement as follows: " Which, when paid, will entitle S. A. Backus to an undivided one-half interest in the Crow property, for which Jones is then to give him a deed."

The witness was asked to describe the Crow property mentioned in the paper, and a map was produced and the witness asked whether the map showed the property described in the contract of February 9th, 1867, and also the property known as the Crow property. The plaintiff's counsel objected on the ground that the contract must be self-sustaining as to the property covered by it; and irrelevant; and incompetent. The objections were overruled, and the evidence admitted. (Sixth assignment of error.)

The same witness then testified, under objection and exception, to an alleged parol agreement between himself and N. F. Jones at the time the contract of February 9th, 1867, was made, in relation to a credit to be allowed him on the contract on account of his interest in the Crow property. (Seventh assignment of error.)

There was no other evidence of such agreement and the plaintiff positively denied it.

The testimony of the witness contained two theories as to the measure of claim for reduction from the consideration in the contract.    On one theory the credit alleged to be contracted for was dependent on the value of his interest in the Crow property ; on the other it was dependent on the value of his interest in the Crow property compared to the value of the whole property as fixed in the contract.

In support of the latter view the testimony of Backus was admitted, under objection, that the value of the Crow property was to the balance of the property as 3 to 2.    (Eighth assignment of error.)

In support of the former theory the evidence of Roswell

[Jones v. Backus.]

Sartwell, witness, was admitted that the value of the undivided half of the Crow property was worth from $2,500 to $3,000; followed by L. Rogers, M. A. Sprague, and G. M. Smith. (Ninth assignment of error.) No evidence was given of the value of the whole property, or of the balance exclusive of Backus's interest in the Crow property.

The court, OLMSTEAD, P. J., instructed the jury, *inter alia*, as follows :

[It appears that there were some land transactions between the parties, and, if I recollect the testimony correctly of both Backus and Jones, there was a settlement between them on May 13th, 1864, and there was at that settlement found to be due to Jones from Backus the sum of $965.47, and, as I recollect the evidence, it was agreed between them at that time that, when the sum of $965.47 was paid Jones by Backus, that Backus was to have a deed from Jones of a one half interest in the Crow property situated in this borough, and which has been pointed out to you on the map that has been explained to you.]    (Tenth assignment of error.)

As I recollect the evidence of Jones and Backus, they made another settlement some time in April, 1865, and at which settlement Backus was charged with the balance unpaid the year before on the Crow property, and some other items, and was credited with the sum of $465, leaving a balance still due, according to the testimony of Jones, on the one half interest in the Crow property, $594.93.

[This was the position of affairs on the 9th day of February, 1867, when a formal contract in writing was entered into between the parties, by the terms of which Jones agreed to sell and Backus agreed to purchase, first, what was called in the contract the Payne property, in squares 65, 45, and 46 on the town plot of Smethport; second, certain squares in the town described by numbers in the contract, and certain out-lots, aggregating in all about seventeen acres. This is what is called in this case the Crow property, as I understand, and is the property that Backus had an equitable title in one half of, and on which he owed Jones at the time $594.93 and some interest. The third piece of land in this contract was about one acre in the borough of Smethport, that was called by some of the witnesses the Chadwick property. By the written terms of this contract Backus was to pay five thousand dollars for these three parcels of land. There was one acre and an out-lot connected with it also. That is not very material, however. He was to pay five thousand dollars for these three parcels of land, three thousand dollars of which was to be paid on the first of the January then next ensuing, and

two thousand dollars in two equal annual payments thereafter.]   (Eleventh assignment of error.)

\*          \*          \*          \*          \*          \*

[Now, upon the face of the paper evidence we have a balance upon the contract of 1867 of $3,000 unpaid.   Has this $3,000 or any part of it been paid?   Or, if so, what payments have been made upon it?   This depends on the view which you may take of the testimony of the witnesses bearing on this subject.  The testimony mainly is the testimony of Backus on the one side, and the testimony of Jones, the plaintiff, on the other side.   Backus swears that he rendered some services to Jones which Jones agreed should be applied as payments upon this contract.   Among these charges, he swears he did boarding for the plaintiff and his family, amounting to $130, or some other sum that I don't recollect distinctly.   That he made a sale of a charter in which Jones was interested, for which he claims a commission ; and a sale of some property to Kennedy on which he claims a commission ; and of some property in Eldred, to some person, on which he claims a commission.]   (Twelfth assignment of error.)

Now, there can be no set-off in this case.  No matter though Backus may have rendered the services as alleged, and no matter though he ought to be paid for the same, it cannot be set off against the plaintiff's claim in this action.   But if these services were rendered under a contract or agreement, as stated by Backus, that the value of the services should be applied as payment on the contract, then the jury should apply them as payment as of the date when the services were rendered.]   (Thirteenth assignment of error.)

\*          \*          \*          \*          \*          \*          \*

[But the more serious question of payment grows out of the testimony of Backus as to what occurred at the time of the execution of the contract of February 9th, 1867.   You will recollect that at that time Backus had an agreement or contract for the purchase from Jones of a one half interest in the Crow property which was included in the contract of February 9th, 1867, and that there was due to Jones upon that one half interest the sum of about $594.93, with interest probably from some time in April, 1865.   Mr. Backus swears that at the time this agreement in writing of February 9th, 1867, was entered into, it was agreed that the value of the interest he then had in the Crow property was to be subsequently ascertained, and its value compared and proportioned to the whole value of the property covered by the contract then made, and when so ascertained the amount was to be credited as payment on the contract then made.]   (Fourteenth assignment of error.)   Mr. Jones expressly denies that any such agreement

was made. He says there was nothing said about the Crow contract at the time; that it was a sale of the entire property or interest which he had here in a lump for the round sum of $5,000. [You are to compare the testimony of the plaintiff and the defendant upon this question, and see what it proves. Does it clearly satisfy you that the agreement was as Backus states? If you are not satisfied from this evidence that such was the agreement, then the defence so far fails and falls to the ground. But if you are so clearly satisfied, then you will proceed to consider the evidence bearing on the question of the proportionate value of the one half interest in the Crow property, and when that is ascertained the amount due Jones on the Crow property should be deducted therefrom, and the balance applied as payment on the remaining $3,000 unpaid on the contract of February 9th, 1867.] (Fifteenth assignment of error.) [If you are satisfied that this credit should be allowed, you will ascertain the amount from the testimony bearing upon that question—from the testimony of Backus, and the testimony of Rogers, Sartwell, Smith and Sprague, and whatever evidence there may be bearing on the question.] (Sixteenth assignment of error.)

Verdict for the plaintiff for the land described in his writ, subject to be released on the payment of the sum of twenty-four hundred and eighty-five dollars and eighty-five cents, as follows: four hundred and eighty-five dollars and eighty-five cents, with interest on the whole amount, three months from this date; one thousand dollars, with interest on the whole amount, nine months from this date; and one thousand dollars, with interest and costs of suit, fifteen months from this date, and judgments thereon, whereupon the plaintiff took this writ and filed the assignment of error as above indicated.

*David Sterrett*, and *R. Brown* (*Robert H. Rose* with them), for plaintiff in error.—By the rulings embraced in the first and second assignments of error, the court below held that the appeal from the award was an appeal of S. A. Backus and Lucius Rogers; in other words, that both defendants were appellants. This was error if the appeal entered from the award was the appeal of S. A. Backus, one of the defendants.

If a suit against two be referred to arbitrators and an award made against both, from which one appeals, the judgment remains against him who does not appeal, and the cause is tried against the other alone: Sterrett *v.* Ramsey, 2 Watts, 91; Anderson *v.* Levans, 1 W. & S., 334; Ross *v.* Dysart, 12 Harris, 395; Donaldson *v.* Cunningham, 13 S. & R., 243; Ingham *v.* Tracy, 5 Watts, 333; Rice *v.* Foster, 2 W. & S., 58; Hartman *v.* Statel, 2 P. & W., 223.

In the case before us there can be no presumption that Backus intended to appeal for Rogers. They were in no sense joint defendants. They had severed in their pleadings. The title of Rogers was adverse to Backus.

The matter involved is much more than a question of practice. The foregoing decisions became a rule of property in this case. For, according to these decisions, the award became absolute as to Lucius Rogers on the first July, 1884, and cannot be re-judged in a second trial: Seitzinger *v*. Ridgway, 9 Watts, 497; Coughanour *v*. Bloodgood, 3 Casey, 285. And his equitable title then became vested in the plaintiff: Maxson's Appeal, 25 P. F. S., 176; Arnold's Administrators *v*. Fitzgerald, 2 Id., 385; Damon *v*. Bache, 5 Id., 67. In such case the principle of *stare decisis* should be adhered to: McDowell *v*. Oyer, 9 Harris, 423.

When the plaintiff applied for leave to issue the writ of *habere facias possessionem*, the verdict and judgment was complete and had received the approval of the court. No objection had ever been made to the plaintiff's title, nor had his power to convey in accordance with his covenant ever been called in question. He had done nothing to waive his right to insist on a strict compliance with the verdict, unless his seeking to set aside the verdict and obtain a new trial implies such waiver, and we claim it does not. The equity powers of the court in such cases avail to extend the time of payment and withhold the entry of judgment or absolute affirmance on this ground: Craig *v*. Shatto, 9 W. & S., 82; Pendleton *v*. Richey, 8 Casey, 58; but further than this the cases do not go. The controversy at law was therefore at an end, and the record and undisputed facts stated in the plaintiff's application entitled him to the writ: Gable *v*. Hains, 2 P. & W., 264; Trearter *v*. Fleisher, 7 W. &. S., 137; Chew *v*. Phillips, 8 Casey, 205; Gordonier *v*. Billings, 27 P. F. S., 498; Connolly *v*. Miller, 14 Norris, 513.

In considering the admissibility of this evidence as varying the written contract, the nature of the contract, its subject-matter, and the relation of the parties, all become material. It was a contract under seal for the sale of land, and such as the statute requires to be in writing. It was clear, complete, and unambiguous. The written contract was the basis of defence, and the parol evidence was offered to increase or enlarge the equitable estate held under the writing. It is also to be observed that there was no allegation of fraud or mistake in writing the contract; also that the alleged parol equity was stale, and that defendants had held the land for a long period under the written agreement.

A party seeking to reform a deed in a specific particular

cannot introduce parol evidence of an original parol contract, or terms or stipulations at variance with the other provisions of the written instrument as to which no fraud, mistake or surprise is alleged: Whar., Law of Evid., § 1020.

So far as concerns the parties or privies to a dispositive document valid in itself, its terms cannot ordinarily be varied by parol: Whar., Law of Evid., § 920; Albert's Executors v. Zeigler's Executors, 5 Casey, 50; Collins v. Baumgardner, 2 P. F. S., 461; Heilner v. Imbrie, 6 S. & R., 400.

The exact question seems to us to be ruled in Harbold v. Kuster, 8 Wright, 392, in a brief opinion by THOMPSON, J., in which a number of decisions in this court are cited.

In Sennet v. Johnston, 9 Barr, 335, it is held that agreements additional to that reduced to writing, respecting the subject-matter of a contract thus evidenced, cannot be proved by parol, unless fraud or mistake is shown. To same effect is Ellmaker's Executors v. The Franklin Fire Ins. Co., 5 Barr, 182.

Parol evidence is inadmissible to enlarge the estate granted: Penns. Canal Co. v. Betts, 1 W. N. C., 368.

In case of a bill, when the answer denies the allegations, the plaintiff must establish his allegations by the testimony of two witnesses, or by the testimony of one, with such corroborating circumstances as are equivalent to the testimony of another witness: Audenreid's Appeal, 8 Norris, 120; Campbell v. Patterson, 14 Norris, 447. This is the familiar rule in equity. The same rule is applicable to equitable ejectments since the Act of 15th April, 1869: Billentine v. White, 27 P. F. S., 27.

M. F. Elliott and T. A. Morrison (N. B. Smiley with them), for defendants in error.—The appeal from the award of arbitrators was an appeal for both defendants: Hartman v. Stahl, 2 P. & W., 223; Rice v. Foster, 2 W. & S., 58; La Fitte v. La Fitte, 2 S. & R., 105; Bonner et al. v. Campbell et al., 12 Wr., 286.

But, in addition to this, we deny that an award of arbitrators in an action of ejectment to enforce specific performance of a contract for the sale of real estate has the force and effect of a verdict of a jury and judgment thereon. We claim that, if the award had not been appealed from, it would not support a writ of habere facias possessionem. In taking this position we are not unmindful of the fact that in Amick v. Oyler, 1 Casey, 506, this court, in a very brief opinion by Justice LOWERY, on page 508, seems to hold otherwise; but the question we desire to raise does not appear to have been fully and fairly before the court, and it will be observed that this case

[Jones *v.* Backus.]

is decided on the theory of an award and judgment thereon, while in the case in hand there never was a judgment on the award of arbitrators.

The Arbitration Act of June 16th, 1836, § 1 (Purdon's Digest, p. 77), expressly excepts from its provisions such actions "as respect the title of real estate."

In Steele *v.* Lineberger *et al.*, 59 Pa. St. R., 308, this court held that the Act of 21st March, 1806, was supplied by that of 1836. And in Painter *v.* Kistler, 59 Pa. St. R., 333, this court held that the old Act of 1705 has been substantially re-enacted by the Act of 1836. See foot note "K" on p. 77 of Purdon's Digest, ed. of 1873: Ives *et al. v.* Leet *et al.*, 14 S. & R., 301.

The action of ejectment to enforce specific performance is a substitute for a bill in equity, and is to be tried and determined on equitable principles: Deitzler *v.* Mishler, 1 Wright, 82: Hill *v.* Oliphant, 5 Wright, 364.

The defendants were not bound to tender the amount of a verdict, before judgment, while the plaintiff was doing all in his power to get it set aside and a new trial granted: Pendleton *v.* Richey, 8 Casey, 58.

The parol testimony of Backus was admissible: Chalfant *v.* Williams, 11 Casey, 214; Grover *v.* Scott, 30 P. F. S., 88; Greenawalk *v.* Kohn, 4 Norris, 369; Hoopes *v.* Beale, 9 Id., 82; Leary *v.* Meredith, 5 W. N. C., 37; Barclay *v.* Pursley, Leg. Int. Nov. 27th, 1885; Parcell *v.* Grosser, Leg. Int. Feb. 19th, 1886.

Mr. Justice GREEN delivered the opinion of the court, October 4th, 1886.

The first assignment is not sustained. The affidavit on appeal was made by one of the defendants, but the recognizance was for both, though signed by one and a surety. This brings the case within the rulings in La Fitte *v.* La Fitte, 2 S. & R., 107; Hartman *v.* Stahl, 2 P. & W., 223 and Bonner *v.* Campbell, 12 Wr., 286, in all of which it was held that if one of the defendants make the affidavit required by the Act, and the recognizance be for all, the appeal will stand for all.

The second assignment is not pressed and has no merit.

Third, fourth and fifth assignments. The plaintiff by his motion for a new trial prevented any further action in the case until the disposition of that motion. There was not, and could not be, any judgment entered on the verdict until the court decided whether there should be a new trial. Hence the defendant was prevented from making the first payment directed by the jury, because the question whether he should make any payment was still undetermined. The motion for a new trial was made and rule granted on March 21st, 1885,

[Jones v. Backus.]

but it was not decided until December 8th, 1885. The jury fee was not paid and judgment on the verdict was not entered until December 12th, 1885. In the meantime the defendant had on December 11th, 1885, tendered to plaintiffs' attorney the amount of the first instalment due on June 19th, under the verdict which was refused, and the next instalment did not become due until December 19th, 1885. On that day the defendant tendered what was supposed to be the full amount then due, to wit, $1,595, and this was refused, whereupon the defendant on December 21st, asked leave to pay the money into court and leave was granted on the 22d and money paid in on the 29th. In these circumstances the court below refused a writ of *habere facias* to the plaintiff, and this is complained of as error. It is quite clear that the defendant was not in default in not tendering the first instalment at the time fixed for its payment by the jury. As we have already said the plaintiff by his motion for a new trial postponed the time of that payment. In a similar case, Pendleton *v.* Richey, 8 Cas., 58, where the plaintiff was ordered in a conditional verdict to pay the defendants for improvements by a fixed time, there was a motion for a new trial by the defendants which was undisposed of when the time for payment arrived, and the foregoing doctrine was applied. THOMPSON, J., said, "When the motion was dismissed judgment was directed to be entered on the verdict, and the time extended one month. This was the legal termination of the suit. There was no judgment in the case until this time, and as the motion was made by the defendants it was they who delayed the entry of judgment which in law is the end of controversy. The plaintiff was not bound to do any thing, until judgment was entered, for *non constat* a new trial might be granted." In the case of Connolly *v.* Miller, 14 Norr., 513, we held that in the case of a conditional verdict in ejectment a writ of *habere facias possessionem* is not of course, as in ordinary cases of judgment in ejectment, but can only be issued by leave of court, and the party asking for the same must show to the satisfaction of the court that he is justly entitled to it. It is not necessary to review the circumstances of that case nor the very lucid opinion of Mr. Justice MERCUR, who stated the doctrine of the right of the court to grant or refuse the writ according to the equitable character of the facts attending the application. It is true the question was as to extending the time of payment, but the considerations which determine that question are equally applicable where the motion is directly for the granting of the writ. In the present case there was no default, because the plaintiff's motion for a new trial excused the defendant from tendering the first instalment at the time

4 AMERMAN.—9

fixed in the verdict, and the whole amount of the first and second instalments was actually tendered on the day when the second instalment matured. It is said the amount tendered was $2.71 less than the amount actually due, owing to some error in the calculation of interest, though this was not discovered until after the money was paid in. As the amount was fixed by the order of the court it can in no sense be considered as a conscious and intended dereliction by the defendant, and the maxim *de minimis* is clearly applicable. We think the court was entirely right in refusing the writ of *habere facias* and these assignments of error are dismissed.

We do not sustain the sixth, tenth and eleventh assignments because we think the written settlement of May 13th, 1864 sufficiently describes and embraces the Crow land to justify the admission of parol evidence to apply the description to the land.

The remaining assignments present a question of a different character and more difficult to deal with.

The written agreement of 9th February 1867, stipulates for the sale by the plaintiff to the defendant Backus, of certain lands therein described, and for the payment therefor by the said defendant of the sum of five thousand dollars of which sum $3,000 were to be paid on the following first day of January, and $2,000 in two equal annual instalments from that date. There is not the least ambiguity in the language of this instrument. The defendant was undoubtedly to pay $5,000 in money for the land to be conveyed. He now proposes to prove, and was permitted to testify, that instead of paying $5,000 he was to pay an indefinite and uncertain sum, which could only be determined, and as he says, was to be determined, in the future, by deducting from the $5,000 a sum which should represent the relative value of one half of the Crow property as compared with the whole value, $5,000, of all the properties sold, the Crow being one, after deducting from this relative value the amount which Backus still owed Jones for that one half. How this relative value of the Crow property was to be determined, or by whom, or when, is not stated or explained by Backus, the only witness called to prove this alleged parol contemporaneous agreement. Of course it is possible that two contracting parties might make such an agreement as this, but it is so extremely incredible that any vendor in the possession of his senses, would ever consent to part with his title in such a manner, that nothing short of the clearest, most precise, and above all, the most indubitable, testimony ought to be permitted in support of such a contract, as against a solemn written contract which contains no such feature. How, even a purchaser would

[Jones v. Backus.]

consent to such an arrangement is almost equally incomprehensible. For the vendor could not know how much money he was to get for his land, and the vendee would be ignorant as to the amount he was to pay. If an arrangement of so extraordinary a character was really to be made it is incredible to the last degree that the parties would not have inserted it in their written contract. Yet in the present case there is not the slightest attempt to explain this remarkable omission. The witness does not allege that it was a part of the actual agreement which was omitted by mistake, or that he was induced to sign the contract by any representation that it should be regarded as a part of the agreement, nor that there was any fraud or mistake of any kind. He was asked to explain on cross-examination, and the reasons he gives for not putting the alleged understanding in the written contract are altogether unsatisfactory. He was asked: *Q.* Why didn't you and he agree on the price or on the value of it at that time? *A.* It was spoken of at that time. *Q.* Why didn't you and he agree on it at that time? *A.* The reason I gave —I told him I hadn't my memorandum or contract with me. *Q.* It wasn't necessary for you to have your contract of 1864 to fix on the value of the Crow property? *A.* It was to know how much was paid on it. *Q.* Couldn't you fix on the value of the Crow property? *A.* We didn't try. *Q.* You could have fixed on it at that time without an order of court? *A.* It is possible that we could. *Q.* And then when you got the contract you could deduct what was paid and that would be the balance to put on the new contract? *A.* Yes, sir. *Q.* Why didn't you put into your contract that you made in 1867, something about this agreement in regard to the Crow property that you have testified to? *A.* We talked the matter over and Mr. Jones drew the contract and said there would be no trouble, that we could get at that at any time. He didn't show me a copy of that contract of 1864. *Q.* Then you left all the main part of the contract open to the subsequent settlement? *A.* So far as regards the Crow property. *Q.* The title to the Crow property was in Mr. Jones? *A.* Yes, sir. *Q.* You say that contract was made at Mr. Jones' house in 1867? *A.* Yes, sir. *Q.* There was no one present but you and him? *A.* I think not. I do not remember of any one."

If after such testimony as this the terms of a written contract may be set aside, and other and different terms of a material and important character substituted in their place, the rule prohibiting parol evidence to alter the terms of written instruments should be at once stricken from our system of jurisprudence. The case presents nothing but an attempt to

[Johnson's Appeal.]

substitute a parol stipulation in place of a written one of an entirely different character. It can not be said it is only a mode of payment. It is the payment of a different sum and in a different manner from the amounts and the mode prescribed in the contract. By the contract the amount fixed was $5,000. By the parol substitute it was to be no specified sum, but it was to be much less than $5,000 and no method for its ascertainment was defined.

It is almost needless to add that the plaintiff denies most earnestly, emphatically and absolutely the whole allegation of the defendant on this subject. He says the subject was not even alluded to and no agreement of any kind was made to allow any credit on the $5,000 on account of the defendants' interest in the Crow property.

In these circumstances the case comes clearly within the rule, well established in this court, that the unsupported oath of one of the parties to an instrument is not sufficient to defeat or change it when opposed by the oath of the other party: Juniata Build. & Loan Ass. *v.* Hetzel, 7 Out., 507; Phillips *v.* Meily, 11 Id., 536. To the same effect are Ballentine *v.* White, 27 P⚫S., 27; Sower *v.* Weaver, 28 Id., 443. There was no other witness, and there was no corroborating circumstances supporting the defendant's testimony in this case, and as he was contradicted both by the positive oath of the plaintiff and by the express terms of the written contract, his testimony was insufficient to change or alter the contract and the jury should have been so instructed. The judgment is reversed on the 7th, 8th, 9th, 12th, 13th, 14th, 15th and 16th assignments of error.

Judgment reversed, and a <em>venire facias de novo</em> awarded.