# Eichenberg v. Leed.

The Court has no power to open judgments entered on transcript from a Magistrate. The only methods of bringing the merits of such case before the Court is by appeal within the prescribed time or by allowance *nunc pro tunc,* which has the effect of opening the judgment.

An appeal *nunc pro tunc* will be allowed where the party himself, or his agent acting for him, has been misled as to his rights and duties.

A principal and his surety executed a joint promissory note, on which suit was subsequently brought before a Justice of the Peace who entered judgment against both defendants. The principal took an appeal as he thought, for both himself and co-defendant, having been so advised by the Justice, but the appeal was made to apply only to himself.

*Held,* That the other defendant should be allowed to appeal *nunc pro tunc.*

*Quaere,* Whether under the circumstances any additional appeal is necessary, and the appeal of one defendant when the recognizance is for both, is not the appeal of both.

MAGISTRATES' JUDGMENTS—OPENING OF—APPEAL *nunc pro tunc.*

Rule to open judgment and for appeal *nunc pro tunc.*

No. 150, August Term, 1902, C. P. of Lancaster Co.

W. U. Hensel, Esq., for rule.

H. Frank Eshleman, Esq., contra.

Opinion by LANDIS, J., October 13, 1902.

If an appeal is granted in this case the judgment entered on the transcript falls as of course. It is, therefore, unnecessary for us to consider the question of opening the judgment, and it would prove fruitless even if we did. This Court has no power to open judgments entered before magistrates, and to permit the defendant here to make a defense. A defendant must appeal if he desires his case heard in this form on its merits.

The leave to enter an appeal *nunc pro tunc* is, however, something entirely different. From the undisputed testimony and the transcript it appears that, on November 17, 1888, U. D. Miley and John S. Leed made their joint promissory note for $100.00 to the plaintiff, payable at the Ephrata National Bank six months after date with interest. The debt was actually that of Miley, and Leed was merely surety. Suit was commenced on

July 2, 1902, on this note before George F. Weidler, Esq., a Justice of the Peace, and on July 10, 1902, the Justice entered judgment against both the defendants for the sum of $155. On July 18, 1902, Miley took an appeal as he states, both for himself and Leed, and at the same time he paid all costs accruing before the Justice. This appeal was in due time entered in this Court. Miley testified that when he appeared to take the appeal he was told by the Justice that he could take it out for both, and that it was unnecessary for Leed to appear, and at the time he signed the papers he understood that he was appealing in behalf of both. That he communicated to Leed what had thus been told him, and after the appeal was taken, informed Leed that he had taken it in behalf of both. Leed corroborates these statements, and further says that it was on account of the information thus conveyed to him that he did not personally appeal.

It is needless to say that where a Justice interferes to prevent an appeal, or is guilty of any acts or makes any statements whereby a party is misled, an appeal may be permitted by the Court *nunc pro tunc,* and this rule equally applies whether the party appears in person or by his agent. If, then, in this case the Justice said to Miley that he could appeal for both, and Miley then informed the Justice that he would do so, and after a consultation between Miley and Leed, Miley agreed to take out the appeal, and through the error of the Justice to so prepare the papers Miley's appeal was made to apply to himself instead to both, the Court has the power and should grant relief.

It is true that the Justice denies these assertions, but the probabilities of the case are strong in favor of Miley's version, he having alleged a defense, taken an appeal and paid the costs. It was his debt, and if it was paid, as he claimed, Leed would have been discharged. If his contention is found to be correct, we would have the anomalous position of the principal being discharged from his debt because he has paid it, and nevertheless his surety being held liable and compelled to pay it a second time. This ought not to be, and therefore we think, under such circumstances, we should place the principal and surety on the

Eichenberg v. Leed.

same footing by granting an appeal *nunc pro tunc*. This we accordingly do.

It may, however, be doubtful whether any additional appeal is, under the facts, necessary, though of course it can do no harm. It will be found that the appeal of one where the recognizance is for both is the appeal of all. Thus, in La Fitte v. La Fitte, 2 S. & R., 107, it was held that "If one of several defendants make the affidavit required by the 'Act regulating arbitrations' for an appeal, and the recognizance be for all the defendants, the appeal will stand for all;" and in Jones v. Backus, 114 Pa., 120, that "the affidavit on appeal was made by one of the defendants, but the recognizance was for both, though signed by one and a surety." See also Bonner v. Campbell, 48 Pa., 286.

The rule for leave to take an appeal *nunc pro tunc* is made absolutely.

Rule made absolute.

From Lancaster Law Review,
Lancaster, Pa.